UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JEFF E. WILSON,

      Plaintiff,

vs.                                    Case No. 3:11-cv-698-J-34MCR

PAGE A. SMITH, et al.,

      Defendants.

_____

**REPORT AND RECOMMENDATION**[1]

    **THIS CAUSE** is before the Court on Defendant Dean C. Lohse's Motion to Dismiss the Plaintiff's Amended Complaint and Motion for Summary Final Judgment (hereinafter Lohse's Motion for Summary Judgment) (Doc. #48), Defendants Smith, Howell, and Belizaire's Motion to Dismiss (hereinafter Defendants' Motion to Dismiss) (Doc. #53), and Defendant Isra's Motion for Summary Judgment (hereinafter Isra's Motion for Summary Judgment) (Doc. #63). The Court advised the pro se Plaintiff of the provisions of Fed. R. Civ. P. 56, and gave him an opportunity to respond. See Order (Doc. #20) at 4-5; Order (Doc. #65). Plaintiff has responded. See Plaintiff's

_____

[1] Any party may file and serve specific, written objections hereto within **FOURTEEN (14) DAYS** after service of this Report and Recommendation. Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal. See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

Response Answering Defendant Lohse's Motion to Dismiss and/or
Motion for Summary Judgment (Doc. #70), Plaintiff's Response
Answering Defendants Smith, Howell, and Belizaire's Motion to
Dismiss, Failure to Exhaust Administrative Remedies (Doc. #71), and
Plaintiff's Response to Defendant Isra's Motion for Summary
Judgment (Doc. #72).  Pursuant to the Standing Order (Doc. #1) in
Case No. 3:12-mc-44-J-99MMH-JBT, the dispositive motions have been
referred to the undersigned for issuance of a report and
recommendation.  Accordingly, the matter is now ripe for judicial
review.

## I.  PERTINENT PROCEDURAL BACKGROUND

Plaintiff, an inmate of the Florida penal system who is
proceeding pro se, initiated this action by filing a Civil Rights
Complaint Form (Doc. #1) on July 15, 2011.  On December 19, 2011,
he filed an Amended Complaint (Doc. #12).  Plaintiff is now
proceeding on a Second Amended Complaint (Complaint) (Doc. #41),
filed April 17, 2012, in which he names the following individuals
as the Defendants in this action: Dr. Page A. Smith, M.D., the
Medical Executive Director at the Reception and Medical Center
(hereinafter RMC); Dr. P. Isra,[2] a physician at RMC; Dr. W.
Belizaire, M.D., a physician at RMC; Mr. Howell, a correctional
officer at RMC; Dr. Lord, M.D., an orthopedic surgeon at RMC; and

---

[2] Plaintiff names "Dr. Izra" in the Second Amended Complaint;
however, the correct spelling is "Dr. Isra."

2

Dr. Dean C. Lohse, M.D., a neurologist at Memorial Hospital Jacksonville (Memorial Hospital).

Plaintiff claims that the Defendants were deliberately indifferent to his medical needs at his initial intake into the Florida Department of Corrections (FDOC) and following an injury that occurred on November 23, 2008. He asserts that, on November 20, 2008, during the initial intake check, Defendant Isra failed to conduct an adequate health and safety screening in that he did not issue Plaintiff a low/bottom bunk pass for Plaintiff's physical handicap. Plaintiff states that, from November 20th through November 23rd, Officer Howell forced Plaintiff to climb up to and down from the upper bunk. Plaintiff alleges that, as a result of Isra's "oversight," see Complaint (Doc. #41) at 10, Plaintiff fell off the top bunk on November 23, 2008. According to Plaintiff, on November 23rd, Plaintiff's legs collapsed due to his handicap, causing him to fall while trying to climb down from the top bunk.

Additionally, Plaintiff claims that Defendants Belizaire, Lord, and Lohse failed to provide proper medical care, and Defendant Page A. Smith, acting as the Medical Executive Director, denied Plaintiff's grievances relating to his requests for adequate medical care to address his complaints. As relief, Plaintiff requests that the Court issue an injunction directing the FDOC to provide medical treatment, surgery, and/or physical therapy and pain medication (Lortab) and a muscle relaxer (Robaxin), as

3

prescribed by Dr. Brodeur.  Id. at 14.  Additionally, he seeks
compensatory and punitive damages.  Id. at 14-15.

## II.  <u>THE FACTS</u>[3]

### A.  <u>Plaintiff's Initial Intake Screening on November 20, 2008</u>

When inmates first arrive and are taken into FDOC custody,
they proceed through an initial intake screening process where they
are evaluated by medical staff.  Isra's Motion for Summary
Judgment, Def. Ex. A, Declaration of Dr. Paiboon Isra, M.D.
(hereinafter Isra's Declaration), Def. Ex. B, Declaration of Dr.
Page A. Smith, M.D.  (hereinafter Smith's Declaration).  A nurse
performs the initial screening.  Id.  Following the initial
screening, the nurse refers the inmate to a medical doctor or a
psychiatrist, if necessary, to prescribe medication, write the
appropriate medical passes, or issue medical equipment.  Id.

On November 20, 2008, Nurse Carol Kinchen conducted
Plaintiff's initial intake screening.  Id.; Def. Exs. A1; B1,
Initial Intake Screening Summary.  During the screening, Plaintiff
reported a prior back injury from lifting in 2007 at S1-S5 and L4-
L5 as well as mild scoliosis and complained of pain.  Id.  Nurse
Kinchen did not write anything in her assessment relating to

_____

[3] Plaintiff has submitted exhibits (hereinafter P. Ex.) in support
of his Complaint (Doc. #41) and responses to Defendants' motions.
Defendants have also submitted exhibits (hereinafter Def. Ex.) in support
of their dispositive motions.

4

Plaintiff's need for a low bunk pass.  Id.  In a grievance to the Warden, Plaintiff described the initial intake screening:

> On 11-20-08 when I saw the intake nurse I made it clear to her that L-4, L-5, S-1 bulging discs, [sciatic] and other nerves pinched.  I told her that I needed a cane to help me walk and that I "could not" climb up and down off a top bunk.  Due to my prior lower back injury. Upon being housed, I was given my medical pass which was for a cane only.

Complaint at 28, Request for Administrative Remedy or Appeal, dated January 11, 2010; Complaint at 30, FDOC Health Slip/Pass (Cane Pass), issued November 20, 2008.  Plaintiff was then referred to Dr. Isra, who issued a cane pass and prescribed Motrin, as needed for pain.  See Isra's Declaration.

## B.   **Plaintiff's Fall on November 23, 2008**

Plaintiff states that, from November 20th through November 23rd, Defendant Howell forced him to climb up to and down from the top bunk even when Plaintiff's medical condition was "significantly obvious" to even a lay person.  Complaint at 10.  Thus, while trying to climb down from the top bunk, Plaintiff fell on November 23rd when his legs collapsed.  Id. at 10.  In a grievance, Plaintiff described the incident:

> I was placed on a Top Bunk after I told the intake nurse my medical condition.  So for the next 3 days I was forced to climb up and down off the Top Bunk that caused excruciating pain to my lower back. On 11-23-08 due to Dr. Isra's negligents [sic] my back went out on me when I was trying to climb down off the top bunk.  I fell and landed on my right shoulder and hit my head and loss [sic] concious [sic].

5

_Id_. at 28, Request for Administrative Remedy or Appeal, dated January 11, 2010. Plaintiff asserts that he suffered new injuries as a result of the November 23rd fall. _Id_. at 10.

**C.   Post-Injury Medical Care**

After the November 23rd fall, Plaintiff was evaluated in the Emergency Room at RMC where he complained of back pain. Def. Ex. A2, RMC Emergency Room Record; Isra's Declaration. The FDOC then transported Plaintiff to Memorial Hospital for evaluation, where Dr. Brodeur examined him, conducted "several tests" and prescribed medications. Complaint at 11; Isra's Declaration. In a January 11, 2010 grievance complaining about Dr. Isra's failure to issue a low/bottom bunk pass, Plaintiff described the medical treatment he received at Memorial Hospital:

> I was taken to the E.R. where the E.R. doctor had me taken to the E.R. at Jacksonville Memorial Hospital. I was prescribed 3 medications for pain from the E.R. doctor at Jacksonville Hospital. The E.R. doctor did [a] cat scan and x-rays of my lower back. He said L-4, L-5, S-1 was [sic] injured but he wanted [an] M.R.I. done. He also stated that my shoulder was sprained.

Complaint at 28, Request for Administrative Remedy, dated January 11, 2010.

When Plaintiff returned to RMC the following day, Defendant Dr. W. Belizaire, M.D., reevaluated Plaintiff and issued a low bunk pass for Plaintiff. Isra's Declaration; Smith's Declaration; Def.

Ex. A2, RMC Emergency Room Record.  Plaintiff described the medical treatment provided by Dr. Belizaire:

> On 11-24-08 I was brought back to the E.R. at RMC Main Unit where the doctor with the initial (W.B.) wrote passes for low/bottom bunk, no sports, no strenuous activity, no heavy lift[ing] 5lb., no prolonged standing, no prolonged walking, lay in bed rest, ice pack pass.

Complaint at 28, Request for Administrative Remedy, dated January 11, 2010.[4]  According to Plaintiff, Dr. Belizaire denied Plaintiff the medication that Dr. Brodeur had prescribed.  Id. at 11.

On November 26, 2008, Dr. Erlinda Perez performed Plaintiff's Initial Physical Examination.  Smith's Declaration; Def. Ex. B3, Initial Physical Exam.  Defendant Smith explained the distinction between the FDOC's initial screening and the initial physical examination.

> [The initial physical exam] is a more thorough exam than the initial screening done when an inmate enters Department custody and generally takes place a week or so following that screening appointment.  All areas examined during [Wilson's] physical exam were normal, including the strength of his upper and lower extremities. [Attachment 3, Initial Physical Exam] Under "neurologic" it states "pos. leg raising" which indicates Wilson had difficulty with a posterior leg raise.  (Id.)  This is to be expected with Wilson's history of low back pain.  (Id.)  Wilson was diagnosed with

---

[4] Dr. Isra was not involved in Plaintiff's medical treatment for the November 23rd injury.  Isra's Declaration.  According to the medical records, Dr. Isra did not have any involvement in Plaintiff's treatment other than as a result of the November 20, 2008 initial medical screening.  Id.

7

chronic low back pain with radiculopathy, and was instructed to keep his cane and low bunk passes. (Id.)

Smith's Declaration.

Since his fall from the top bunk on November 23, 2008, Plaintiff alleges he has experienced pain, suffering and mental anguish. He lists his "new injuries" to his lower back as L5 bulging disc, L5-S1 herniated disc, L4-L5 degenerative disc, and L5-S1 pressing on the right nerve root. Complaint at 13. He asserts that the "new injuries" to his neck are C4-C5-C6 compressed discs with C5 pressing on the left nerve root. Id. As to the medical care provided to Plaintiff after the fall, Dr. Isra states:

> To the extent Wilson argues in his Second Amended Complaint that from November 24, 2008, through February 15, 2010, he has been "ignored" by the healthcare providers of the Department of Corrections, that allegation is simply untrue. Since this incident, Wilson's medical record shows he has been seen in medical numerous times during this time frame, has had several orthopedic consults, has had MRIs and x-rays of the lumbar spine, a CT discogram, has been prescribed appropriate medication and medical passes for his condition, and has been treated for all voiced complaints.

Isra's Declaration.

In January 2009, Defendant Dr. Lord, an orthopedic surgeon, consulted with Plaintiff and advised him of the MRI results of his lower back. Complaint at 11. Later, on or about February 15, 2010, an MRI was conducted on Plaintiff's neck. Id. at 11. According to the MRI results, Plaintiff has C4-C5-C6 disc

compressed, C5 pressing against Plaintiff's left nerve root. <u>Id</u>. at 12.

On September 24, 2009, a multi-level discogram at L2-3, L3-4, and L4-5 levels as well as a CT scan of the lumbar spine were performed with the results showing an abnormal disc at L4-5 and normal discs at L2-3 and L3-4. Plaintiff's Response (Doc. #70), P. Ex. A. In May 2010, Defendant Dr. Dean Lohse, a neurologist, consulted with Plaintiff. Complaint at 12.

**D.**   **<u>Administrative Grievances</u>**

Between November 23, 2008 (when Plaintiff fell from the top bunk) and July 11, 2011 (when Plaintiff mailed the initial Complaint (Doc. #1)), Plaintiff filed numerous grievance appeals relating to medical care, <u>see</u> Defendants' Motion to Dismiss, Def. Ex. A, Declaration of Ashley Stokes and Grievance Log, as well as informal and formal grievances. However, only the grievances, responses, and appeals pertinent to the issues in this action will be set forth and addressed.

Plaintiff's grievances and appeals centered upon his assertions that the health care providers merely prescribed Ibuprofen 600 mg tablets and failed to explore other options, such as physical therapy or surgical procedures. Complaint at 13. On November 25, 2008, Plaintiff initiated the administrative grievance process, complaining about his fall and the denial of Lortab. Complaint at 35, Inmate Request.

Later, in a December 4, 2008 grievance to the medical department at RMC, Plaintiff set forth the following facts underlying his medical complaints.

> According to the request that I sent to sick call, you people has [sic] said that I've seen the M.D. 5 times. On 11-20-08 I never seen M.D. I seen the incoming nurse up front. I went and pick[ed] up my cane pass. Never seen M.D. No bottom bunk pass. On 11-23-08, I fell [from] top bunk. Went to hospital in Jacksonville. Doctor at hospital gave me prescriptions for Lortab, Robaxin, and [Prednisone] steroids. I received steroid, Robaxin. So, why would I only receive those two out of the 3. And as far as seeing the M.D. on the 21st, 23, 24th. Never been to see M.D. I had my physical on the 26th. The only M.D. I've seen is on the 23rd E.R. M.D. On 11-26-08 seen the M.D. Perez. She told me to put in for sick call. I want to know what is going on. I've never seen somebody at sick so I better not be charged for it. (I'm writing a grievance.)

Id. at 32, Inmate Request, dated December 4, 2008.

On September 30, 2010, Plaintiff complained that Defendant Howell had forced him to use the top bunk. Id. at 17, Request for Administrative Remedy or Appeal (Log No. 1010-110-007), dated September 30, 2010. In denying the grievance, the Department stated in pertinent part:

> Officer Howell at RMC was contacted and stated that although he does not remember this incident, any inmate that presents a valid medical pass for a lower bunk pass is assigned to a lower bunk.

Id. at 19, Response, dated October 22, 2010.

10

Plaintiff, on January 11, 2010, submitted a grievance against Defendant W. Belizaire, M.D., stating that the emergency room physician at Memorial Hospital had prescribed three medications (Lortab, Robaxin and Prednisone), but that Dr. Belizaire advised Plaintiff that he would receive only two of those medications (Robaxin and Prednisone), not Lortab.  Id. at 25-26, Request for Administrative Remedy or Appeal (Log No. 1001-209-033), dated January 11, 2010.  In response, Defendant Page A. Smith, M.D., stated in pertinent part:

> Review of your record indicates that you have already submitted multiple requests and grievances regarding this issue.  Review also indicates that you were seen by Dr. Belizaire in the Emergency Room and he sent you to the Emergency Room at Memorial Hospital Jacksonville for evaluation.  The medication Lortab was recommended, however, your DOC primary care provider may opt to disagree with the recommendation of a contractor.
>
> If you feel you are in need of pain medication, you always have the option of signing up for sick call to re-address it with the medical staff.

Id. at 27, Response, dated February 1, 2010.

That same day, Plaintiff submitted a grievance complaining that he fell while climbing down from the upper bunk because Defendant Isra had failed to issue him a low/bottom bunk pass on November 20th.  Id. at 28-29, Request for Administrative Remedy or Appeal (Log No. 1001-209-034), dated January 11, 2010.  Defendant Smith responded in pertinent part:

11

>       According to your medical record, the
>       physician conducting your intake physical
>       noted the need for the use of a cane and a low
>       bunk pass. However, it does not appear that
>       you were issued the low bunk pass. This
>       oversight was the result of human error with
>       no malicious intent and therefore does not
>       constitute negligence.
>
>       Further review of your record indicates that
>       on 11/23/08 you were evaluated in the
>       Emergency Room and denied loss of
>       consciousness at that time. You were
>       subsequently transferred to Memorial Hospital
>       for further evaluation and treatment.

Id. at 31, Response, dated February 12, 2010. In Dr. Smith's

Declaration, she clarified her response to Plaintiff's grievance.

>       This response was not directed at the
>       actions of Dr. Isra, as Dr. Isra did not
>       conduct Wilson's intake physical. Dr. Isra
>       only saw Wilson to prescribe medication and
>       issue the cane pass Wilson requested. Dr.
>       Isra's comments do not mention anything
>       regarding a low bunk pass. This reference to
>       "intake physical" refers to Wilson's Initial
>       Physical Exam, conducted by Dr. Perez on
>       November 26, 2008. Dr. Perez did note that
>       Wilson should keep his low bunk pass, and at
>       the time I responded to this grievance it
>       appeared to me that the low bunk pass had not
>       been issued because Dr. Perez did not issue
>       one. This was an oversight in my review of
>       the record, **as I now see Wilson was in fact
>       issued a low bunk pass on November 24, 2008 by
>       Dr. Belizaire when Wilson returned from [the]
>       outside hospital.**

Smith's Declaration (emphasis added).

In March 2010 through July 2011, Plaintiff continued to submit

grievances relating to these medical issues. See Complaint at 36,

Request for Administrative Remedy or Appeal (Log No. 1003-209-022);

39, Request for Administrative Remedy or Appeal (Log No. 1003-209-093).  Defendant Smith, as the Medical Executive Director, denied the grievances, concluding that the medical staff was treating Plaintiff in accordance with FDOC policy and procedure. Id. at 37, Response, dated March 23, 2010; 38, Response, dated April 13, 2010. Later, Plaintiff submitted grievances relating to the medical care provided by Defendant Dr. Lohse, M.D.   Id. at 41, Request for Administrative Remedy or Appeal (Log No. 1007-209-024); 44, Request for Administrative Remedy or Appeal (Log No. 1107-110-061).

Again, after reviewing Plaintiff's medical records, Defendant Smith denied Plaintiff's grievances, stating that the medical staff was providing medical care in accordance with the FDOC policy and procedures and that Dr. Lohse had not made any "special recommendations" for Plaintiff's treatment.  Id. at 40, Response, dated July 30, 2010; 45, Response, dated August 8, 2011.  Moreover, Dr. Smith stated: "Review of your medical records indicates that you were re-evaluated by Dr. Lohse on 5/6/10 to include Dr. Lord's notes.  Dr. Lohse does not recommend surgical intervention at this time.  You are being treated symptomatically by your primary care provider."  Id.

## III.  DISCUSSION

### A.  Standard of Review for Motions for Summary Judgment

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Crawford v. Carroll, 529 F.3d 961, 964 (11th. Cir. 2008) (citing Fed. R. Civ. P. 56©) and Wilson v. B/E/Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004)).

"The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Allen v. Bd. of Pub. Educ. for Bibb County, 495 F.3d 1306, 1313 (11th Cir. 2007) (citations omitted).

> "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324, 106 S.Ct. 2548).[5]

Id. at 1314.

## B.    Standard of Review for Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the

---

[5] Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

14

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

**C.   Defendants' Motions to Dismiss and for Summary Judgment**

**Defendant Dean C. Lohse, M.D.** requests the Court to dismiss the Complaint, or in the alternative, grant summary final judgment in his favor. Defendant Lohse contends that the action arises out of claims of alleged medical negligence relating to care and treatment provided by him to Plaintiff on or about May 6, 2010. He claims that the action should be dismissed with respect to Plaintiff's claims against him, or in the alternative, grant summary judgment in his favor because: (1) Plaintiff is barred from bringing this action because he failed to comply with the pre-suit requirements of Chapter 766 of the Florida Statutes, see Lohse's Motion for Summary Judgment at 7-11; (2) Plaintiff fails to assert any factual allegations supporting a cognizable claim against Dr. Lohse for alleged breach of his civil rights under 42 U.S.C. § 1983, see id. at 11-14; (3) pursuant to the operation of sections 768.28(9)(a) and (10)(a) of the Florida Statutes, Dr. Lohse, as an

employee of a contractor with the State of Florida, Department of Corrections, by statutory decree, is considered an agent of the State of Florida, and therefore may not be personally liable nor named as a party defendant in a case of alleged medical negligence, see id. at 14-16; and (4) Plaintiff's assertions relating to Dr. Lohse are so vague, ambiguous, and non-specific that they fail to state a claim as a matter of law, see id. at 16-17.

Moreover, **Defendants Smith, Howell, and Belizaire** request that the Court dismiss this action for the following reasons: (1) Plaintiff failed to exhaust his administrative remedies regarding all claims against Defendants Smith, Howell, and Belizaire, see Defendants' Motion to Dismiss at 6-10; (2) Defendants Smith, Howell, and Belizaire are entitled to Eleventh Amendment immunity, see id. at 10-11; (3) Plaintiff's allegations against Dr. Belizaire should be dismissed for failure to state a claim, id. at 11-13; (4) Plaintiff's allegations against Defendant Smith for denying the grievances relating to his medical complaints should be dismissed for failure to state a claim, see id. at 13-14; (5) Plaintiff's claim for injunctive relief against Defendant Smith, Howell, and Belizaire should be dismissed as moot since Defendant Howell is not a medical doctor and has no ability to prescribe medication or arrange for medical treatment for Plaintiff and Drs. Smith and Belizaire would not be able to provide medical care since Plaintiff is no longer housed at an institution where they would be able to

16

impact his medical treatment, see id. at 14-16; and (6) Plaintiff's assertion that the Defendants violated Title II of the Americans with Disabilities Act should be dismissed for failure to state a claim, see id. at 16-18.

Finally, **Defendant Isra** requests that the Court enter summary judgment in his favor for the following reasons:  (1) Plaintiff fails to establish an Eighth Amendment violation against Dr. Isra, see Isra's Motion for Summary Judgment at 8-12; (2) Dr. Isra is entitled to Eleventh Amendment immunity, see id. at 13; (3) Plaintiff's claims for injunctive relief against Dr. Isra should be dismissed, see id. at 13-14; and (4) Plaintiff's assertions against Dr. Isra as an ADA violation should be dismissed for failure to state a claim, see id. at 14-17.

### 1.   Exhaustion of Administrative Remedies

Exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits; therefore, an exhaustion defense should be raised in motion to dismiss and treated as such if raised in a motion for summary judgment. See Bryant v. Rich, 530 F.3d 1368, 1374-75 (11th Cir. 2008). "[D]eciding a motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's

response, and if they conflict, takes the plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  Id. (citing Bryant, 530 F.3d at 1373-73).

> If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.  Bryant, 530 F.3d at 1373-74, 1376; cf. Lawrence, 919 F.2d at 1529.[6]  The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies.  See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 921, 166 L.Ed.2d 798 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Dixon v. United States, 548 U.S. 1, 8, 126 S.Ct. 2437, 2443, 165 L.Ed.2d 299 (2006) (stating that, as a "general evidentiary rule," the burdens of production and persuasion are given to the same party); Roberts v. Barreras, 484 F.3d 1236, 1240 (10th Cir. 2007) ("Jones does not spell out the proper burden of proof to use in evaluating exhaustion claims, but circuits that treated exhaustion as an affirmative defense prior to Jones have all put the burden of proof on defendants, to the extent that they addressed the issue."); id. (citing cases).  Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

Id. at 1082-83.

---

⁶ Lawrence v. Dunbar, 919 F.2d 1525 (11th Cir. 1990).

The Prison Litigation Reform Act (hereinafter PLRA) amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. Bryant, 530 F.3d at 1374; Jones v. Bock, 549 U.S. 199, 211 (2007); Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.") (citation omitted).

The Eleventh Circuit has recognized that

> "[t]he plain language of th[is] statute makes exhaustion a **precondition to filing** an action in federal court." Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (per curiam) (quoting Freeman v. Francis, 196 F.3d 641, 643-44 (6th Cir. 1999)). This means that "until such administrative remedies as are available are exhausted," a prisoner is precluded from filing suit in federal court. See id. (affirming dismissal of prisoner's civil rights suit for failure to satisfy the mandatory exhaustion requirements of the PLRA); Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999) ("reaffirm[ing] that section 1997e(a) imposes a mandatory requirement on prisoners seeking judicial relief to exhaust their administrative remedies" **before filing** suit in federal court), modified on other grounds, 216 F.3d 970 (11th Cir. 2000) (en banc); Miller v. Tanner, 196 F.3d 1190, 1193

> (11th Cir. 1999) (holding that under the
> PLRA's amendments to § 1997e(a), "[a]n inmate
> incarcerated in a state prison . . . must
> first comply with the grievance procedures
> established by the state department of
> corrections **before filing** a federal lawsuit
> under section 1983"); Harper v. Jenkin, 179
> F.3d 1311, 1312 (11th Cir. 1999) (per curiam)
> (affirming dismissal of prisoner's civil suit
> for failure to satisfy the mandatory
> exhaustion requirements of § 1997e(a));
> Alexander v. Hawk, 159 F.3d 1321, 1328 (11th
> Cir. 1998) (affirming dismissal of prisoner's
> Bivens action under § 1997e(a) for failure to
> exhaust administrative remedies **prior to
> filing** suit in federal court).

Leal v. Ga. Dep't of Corr., 254 F.3d 1276, 1279 (11th Cir. 2001)

(per curiam) (emphasis added).

If a prisoner does not completely exhaust his remedies prior

to initiating a suit in federal court, the complaint must be

dismissed. This is true even if the inmate exhausts his

administrative remedies after filing his action in federal court

and while the action is pending. See Oriakhi v. United States, 165

F. App'x 991, 993 (3d Cir. 2006) (per curiam) (unpublished);

Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003); McKinney v.

Carey, 311 F.3d 1198, 1200-01 (9th Cir. 2002) (per curiam); Medina-

Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002);

Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001);

Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999).

Moreover, "the PLRA exhaustion requirement requires proper

exhaustion." Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[7] 286 F.3d, at 1024. . . .

<u>Id.</u> at 90. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id.</u>

Here, it is undisputed that Plaintiff exhausted his claims relating to Dr. Isra. Moreover, the record reflects that Plaintiff filed informal and formal grievances concerning the claims against Defendants Smith, Howell, Belizaire, and Lohse. Contending that only four of Plaintiff's grievance appeals relating to medical care were denied on the merits while the remaining appeals were returned without action, Defendants claim that Plaintiff has not sufficiently exhausted his claims against Defendants Smith, Howell, Belizaire, and Lohse. However, given the record of Plaintiff's numerous informal and formal grievances and appeals, the undersigned is of the opinion that Plaintiff has sufficiently exhausted so that the merits of his claims can be addressed. Accordingly, the undersigned recommends that Defendants Smith, Howell, and Belizaire's Motion to Dismiss be denied to the extent

---

[7] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

that this case be dismissed for Plaintiff's failure to fully
exhaust his administrative remedies.

**2.   Eleventh Amendment Immunity**

Defendants Smith, Howell, Belizaire, and Isra contend that
they are entitled to Eleventh Amendment immunity.  See Isra's
Motion for Summary Judgment at 13; Defendants' Motion to Dismiss at
10-11.  In Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986)
(per curium), the Eleventh Circuit noted:

> It is clear that Congress did not intend
> to abrogate a state's eleventh amendment
> immunity in section 1983 damage suits.  Quern
> v. Jordan, 440 U.S. 332, 340-45, 99 S.Ct.
> 1139, 1144-45, 59 L.Ed.2d 358 (1979).
> Furthermore, after reviewing specific
> provisions of the Florida statutes, we
> recently concluded that Florida's limited
> waiver of sovereign immunity was not intended
> to encompass section 1983 suits for damages.
> See Gamble, 779 F.2d at 1513-20.

Accordingly, in Zatler, the court found that the Secretary of the
Florida Department of Corrections was immune from suit in his
official capacity.  Id.  Thus, insofar as Plaintiff seeks monetary
damages from Defendants in their official capacities, the Eleventh
Amendment bars suit.  Therefore, the undersigned recommends that
Plaintiff's claims for monetary damages (for alleged 42 U.S.C. §
1983 violations) from Defendants Smith, Howell, Belizaire, and Isra
in their official capacities be dismissed.

3.   **Defendant Dr. Lord, M.D.**

Plaintiff names Dr. Lord, M.D., as a Defendant in this action. Service of process was returned unexecuted as to Defendant Lord. See Return of Service (Doc. #23), filed March 12, 2012. Thereafter, the Court redirected service of process upon Defendant Lord at the following two addresses:  725 SE Baya Drive, Lake City, Florida 32025 or 917 West Duval Street, Lake City, Florida 32055. See Order Redirecting Service of Process Upon Defendants Isra and Lord (Doc. #40), filed April 18, 2012.   Nevertheless, again, service of process was returned unexecuted for Defendant Lord. See Return of Service (Doc. #45), filed April 25, 2012 (stating "unable to locate Dr. Lord at either address provided by the Court").

Therefore, on June 27, 2012, this Court ordered Plaintiff to provide the whereabouts of Dr. Lord for service of process and notified Plaintiff that his failure to do so or explain his noncompliance would result in the dismissal of Dr. Lord from this action.   On July 16, 2012, while explaining that he wanted to continue to pursue his claims relating to Dr. Lord, Plaintiff stated that he was unable to provide the whereabouts of Dr. Lord for service of process.   See Plaintiff's Response (Doc. #57). Accordingly, the Court granted Plaintiff until November 7, 2012, to either provide an address for Dr. Lord or update the Court as to Plaintiff's efforts. See Order (Doc. #69), filed September 14, 2012, at 2, paragraph 4. As of the date of this Order, neither the

Court nor Plaintiff has been able to obtain the whereabouts of Dr. Lord for service of process of the Second Amended Complaint.  Given the record, including the Court's repeated efforts to serve Defendant Lord, the undersigned recommends that Defendant Lord be dismissed as a Defendant in this action.

### 4. **Defendant Dr. Paiboon Isra, M.D. - Eighth Amendment Claim**

Plaintiff asserts that Dr. Isra failed to adequately screen Plaintiff on November 20, 2008, in that he did not issue Plaintiff a low/bottom bunk pass.  Additionally, Plaintiff alleges that Dr. Isra should have known that <u>not</u> issuing a low/bottom bunk pass to Plaintiff could lead to an accident because Plaintiff had a cane and prior injury.  Claiming that Plaintiff fails to establish an Eighth Amendment violation, Defendant Isra requests that the Court enter summary judgment in his favor.  <u>See</u> Isra's Motion for Summary Judgment at 8-12.

In order to prevail in a 42 U.S.C. § 1983 action, Plaintiff must demonstrate: "(1) that the defendant deprived [him] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing <u>Arrington v. Cobb Co.</u>, 139 F.3d 865, 872 (11th Cir. 1998)).  Here, Plaintiff claims he was subjected to an Eighth Amendment violation by the actions of Defendant Isra.  "The Eighth Amendment of the United States Constitution forbids 'cruel and unusual punishments.' U.S.

Const. amend. VIII.   The Eighth Amendment is applicable to the states through the Fourteenth Amendment." Id. (citation omitted). The Eighth Amendment's prohibitions against cruel and unusual punishments includes "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

A serious medical need is defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (quotations omitted).   There are two components which must be satisfied, an objective one and a subjective one. Bingham, 654 F.3d at 1175.   "Initially, a plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of the defendant's denial was sufficiently serious.   Additionally, the plaintiff must make a 'subjective' showing that the defendant acted with 'a sufficiently culpable state of mind.'" Quirindongo v. Martinez, No. 1:CV-10-01742, 2012 WL 2923996, at *16 (M.D. Pa. July 18, 2012) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

To demonstrate that the official had the subjective intent to punish, the prisoner is required to show: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." Bingham, 654 F.3d at 1176 (quoting Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir.

2004)).  If pain is intentionally inflicted on an inmate or if the inmate is subjected to undue suffering or the threat of tangible residual injury, a deliberate indifference to a serious medical need is demonstrated.  Quirindongo, 2012 WL 2923996, at *16 n.6.

Here, the Court will assume that Plaintiff has presented operative facts showing a serious medical need and satisfied the objective component of the Eighth Amendment by showing that his medical condition was sufficiently serious to warrant medical attention and consideration.  With regard to the subjective component of an Eighth Amendment violation, Plaintiff must establish that Defendant Isra had subjective knowledge of a risk of serious harm to Plaintiff and that Defendant Isra disregarded that risk.  Indeed, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

It is undisputed that, on November 20, 2008, Nurse Carol Kinchen conducted Plaintiff's initial intake screening. Isra's Declaration; Declaration of Jeff E. Wilson (hereinafter Wilson's Declaration) (Doc. #68); Def. Exs. A1; B1, Initial Intake Screening Summary.  During that initial intake screening, Plaintiff reported a prior back injury from 2007, and, according to Plaintiff, he "voiced the fact" that he had previously had a low bunk pass at Marion and Levy County Jails.  See Wilson's Declaration.  After the

26

initial intake screening, it was necessary to refer Plaintiff to a physician who could write the appropriate prescriptions and medical passes, if necessary.   <u>See</u> Isra's Declaration.   Dr. Isra's only encounter with Plaintiff was the November 20, 2008 referral.   Dr. Isra explains his involvement with Plaintiff, stating in pertinent part:

> Wilson was then referred to me to receive medication and requested Motrin and a cane pass due to his low back pain. I prescribed 600 mg Motrin to be taken three times a day as needed for pain and also issued a cane pass.
>
> **Nothing in the initial assessment of Wilson indicated the need for a low bunk pass. At the time, Wilson was 30 years old and in good health.** He did not report any shoulder or arm problems that would prevent him from getting up on to an upper bunk. That he complained of low back pain and that he was issued a cane pass does not mean that a low bunk pass was medically necessary. In addition, Wilson did not indicate to me that he thought he would have issues with an upper bunk, nor did he specifically ask for a low bunk pass. **Due to Wilson's overall good health, I did not find a low bunk pass to be medically necessary at the time, and therefore did not issue one.**
>
> From November 20, 2008, through November 23, 2008, there is nothing in Wilson's medical record indicating that he brought any issue or concerns regarding having an upper bunk to the attention of the medical staff.

Isra's Declaration (enumeration and citations omitted; emphasis added).

Essentially, Plaintiff disagrees with Dr. Isra's medical judgment that a low/bottom bunk pass was not clinically indicated on November 20, 2008. Matters of medical judgment do not rise to the level of deliberate indifference. Estelle v. Gamble, 429 U.S. at 107. Undoubtedly, Dr. Isra was aware of Plaintiff's medical condition and history. Plaintiff has not established deliberate indifference by merely stating that Dr. Isra should have issued a low/bottom bunk pass. It was Dr. Isra's medical opinion that, based on Wilson's "overall good health" (including that Wilson was thirty years old and did not report any shoulder or arm problems that would prevent him from getting up to the top bunk),[8] a low/bottom bunk pass was not "medically necessary" at that time. See Isra's Declaration. Therefore, Dr. Isra prescribed Motrin and issued a cane pass for Wilson, but did not issue a low/bottom bunk pass. According to Plaintiff, when he received his cane pass, he asked the nurse about a low/bottom bunk pass; she responded that Dr. Isra issued only a cane pass and advised Wilson that he should sign up for sick call. See Isra's Declaration.

Plaintiff has not satisfied the subjective component of his claim of deliberate indifference to a serious medical need. He has presented no substantial evidence to rebut Dr. Isra's assertion that he used sound medical judgment when he determined the

_____

[8] See Smith's Declaration ("All areas examined during [Wilson's] physical exam [on November 26, 2008] were normal, including the strength of his upper and lower extremities.").

prescription and medical pass that Plaintiff needed at that time. In sum, Plaintiff has not shown that Defendant Isra acted with deliberate indifference to a serious medical need.

The Court finds that Defendant Isra has met his initial burden of showing the Court that there are no genuine issues of material fact that should be decided at trial. Defendant has presented evidence that, during the pertinent time frame, he responded appropriately to Plaintiff's medical needs. Plaintiff has not demonstrated that Defendant's responses to Plaintiff's medical needs were poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in treatment, or even medical malpractice actionable under state law. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)), cert. denied, 531 U.S. 1077 (2001). Indeed, Wilson's "disagreement with the course of treatment" chosen by Dr. Isra "does not 'support a claim of cruel and unusual punishment.'" See Moots v. Sec'y, Dep't of Corr., 425 Fed. App'x 857, 858 (11th Cir. 2011) (per curiam) (not selected for publication in the Federal Reporter) (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)). Accordingly, the undersigned recommends that Defendant Isra's Motion for Summary Judgment be granted with respect to Plaintiff's Eighth Amendment claim of deliberate indifference to his serious medical needs.

**5. <u>Defendant Dr. W. Belizaire, M.D. - Eighth Amendment Claim</u>**

Plaintiff's sole claim against Dr. Belizaire is that he was the attending physician upon Plaintiff's return to RMC from Memorial Hospital and that Dr. Belizaire denied the medications that Dr. Brodeur, an emergency room physician at Memorial Hospital, had prescribed. In his Complaint and a formal grievance directed against Belizaire, Plaintiff asserted that Dr. Brodeur, at Memorial Hospital, had prescribed Prednisone (to strengthen his muscles), Robaxin (a muscle relaxer) and Lortab for pain. Complaint at 11, 25-26. Then, upon Plaintiff's return to RMC, Dr. Belizaire prescribed Prednisone, Robaxin, and Motrin (instead of Lortab). <u>Id</u>. at 25-26. In response to Plaintiff's grievance concerning Belizaire's medical treatment provided to Plaintiff, Dr. Page A. Smith, M.D., stated in pertinent part:

> Review of your record indicates that you have already submitted multiple requests and grievances regarding this issue. Review also indicates that you were seen by Dr. Belizaire in the Emergency Room and he sent you to the Emergency Room at Memorial Hospital Jacksonville for evaluation. **The medication Lortab was recommended, however, your DOC primary care provider may opt to disagree with the recommendation of a contractor.**
>
> If you feel you are in need of pain medication, you always have the option of signing up for sick call to re-address it with the medical staff.

<u>Id</u>. at 27, Response, dated February 1, 2010 (emphasis added).

Thus, Plaintiff simply disagrees with the type of pain medication provided and believes that he should have been provided with Lortab rather than Motrin. Because Defendant Belizaire has met his initial burden of showing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law, Plaintiff is required to present his own documentation (affidavits, depositions, answers to interrogatories, admissions on file, etc.) to show that there is a genuine issue for trial. Plaintiff has failed to provide any medical evidence to support his claim that Defendant Belizaire was deliberately indifferent to his serious medical needs during the relevant time period. In the Complaint and opposition to the summary judgment, Plaintiff acknowledges that he received medical attention from Defendant Belizaire, but yet opines that Belizaire should have provided a different course of treatment: a prescription strength medication.

Wilson has not provided any competent evidence to rebut the Defendant's evidence, which establishes that Defendant's actions do not constitute an Eighth Amendment violation. Dr. Belizaire's decision not to prescribe Lortab as recommended by Dr. Brodeur at Memorial Hospital, and instead to prescribed Motrin, fails to state a claim for deliberate indifference under the Eighth Amendment. The mere fact that Dr. Belizaire did not initially prescribe Lortab does not mean that Plaintiff was precluded from receiving pain

medication; Plaintiff was given Motrin, and if he was still in pain, he had the option of signing up for sick call to address the issue with the medical staff at his institution.  Plaintiff's assertions are nothing more than a mere disagreement as to the course of treatment prescribed by Dr. Belizaire upon Plaintiff's return to RMC on November 24, 2008.  Indeed, Wilson's "disagreement with the course of treatment" chosen by Dr. Belizaire "does not 'support a claim of cruel and unusual punishment.'"  See <u>Moots</u>, 425 Fed. App'x at 858 (quoting <u>Harris</u>, 941 F.2d at 1505).  Accordingly, the undersigned recommends that Defendant Belizaire's Motion to Dismiss (Doc. #53) be granted as to Plaintiff's Eighth Amendment claim.

### 6. <u>Defendant Dr. Lohse, M.D. - Eighth Amendment Claim</u>

In claiming that Defendant Lohse violated his Eighth Amendment right to be free from cruel and unusual punishment, Plaintiff makes only a brief reference to Dr. Lohse in the body of the Complaint:

> [In] May 2010, the Plaintiff had a consult with neurologist Dr. Dean Lohse in which Dr. Lohse used abuse of discretion against the Plaintiff's serious medical needs, deliberate indifference.

Complaint at 12.  In his Motion for Summary Judgment, Defendant Lohse claims that the action arises out of claims of alleged medical negligence relating to care and treatment provided by him to Plaintiff on or about May 6, 2010.  However, in response, Plaintiff states that he has filed a 42 U.S.C. § 1983 action

against Defendant Lohse for his deliberate indifference to Plaintiff's serious medical needs. See Plaintiff's Response (Doc. #70) at 5. Given Plaintiff's assertions in the Complaint as well as the grievances pertaining to Defendant Lohse, see Complaint at 12, 40-45, the undersigned recommends that Defendant Lohse's Motion to Dismiss the Plaintiff's Amended Complaint (Doc. #48-1) for Plaintiff's failure to comply with the pre-suit requirements of Chapter 766 of the Florida Statutes and pursuant to sections 768.28(9)(a) and (10)(a) of the Florida Statutes be denied.

As to his Eighth Amendment claim, Plaintiff states that Dr. Lohse abused his discretion in treating Plaintiff on May 6, 2010, see Complaint at 41, when he decided that Plaintiff was not a candidate for surgery and that the prescription of narcotics should be accompanied by "very careful" thought, see Lohse's Motion for Summary Judgment, Def. Ex. B, Memorial Hospital Jacksonville, Consultation Report N5201 (hereinafter Lohse's Consultation Report), dated May 6, 2010. Further, Plaintiff asserts that his consultation on May 6, 2010, with Dr. Lohse "did not go as well as the consults [he] had with Dr. Lord." Complaint at 44. According to his grievances, Plaintiff apparently believes that Dr. Lohse should have explored other options, such as surgery or physical therapy, to lessen Plaintiff's pain and suffering.

In his consultation with Plaintiff, Dr. Lohse noted that Plaintiff had started Lortab in November of 2009. Lohse's

Consultation Report.  After reviewing the discograms as well as MRI scans, Dr. Lohse recommended: "[n]o surgery" and "I would strongly recommend very careful decisions regarding further use of narcotics or assistive devices in this patient."  Id.  The United States Supreme Court has stated:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.  A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most[,] it is medical malpractice, and as such the proper forum is the state court . . . .

Estelle, 429 U.S. at 107; Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether [defendants] should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."); Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) ("Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the [inmate's] diagnosis or course of treatment support a claim of cruel and unusual punishment.").

Thus, given the record, Dr. Lohse provided medical services to Plaintiff consistent with his profession, and, even if the Plaintiff disagrees with the manner in which Dr. Lohse conducted himself as a medical doctor, it cannot be concluded that Dr. Lohse was deliberately indifferent to Plaintiff's serious medical needs.

34

See Complaint at 40, Response, dated July 30, 2010 ("Review of your medical records indicates that you were re-evaluated by Dr. Lohse on 5/6/10 to include Dr. Lord's notes.  Dr. Lohse does not recommend surgical intervention at this time.  You are being treated symptomatically by your primary care provider.").  Here, it appears that Plaintiff merely disagrees with Dr. Lohse's medical opinion, stating that Wilson did not need surgery and strongly recommending that "very careful decisions" be made as to Wilson's continued use of narcotics or assistive devices.  At most, Plaintiff has shown a disagreement with the course of treatment chosen.  Indeed, matters involving "medical judgment do not form an appropriate basis for liability under the Eighth Amendment." Ganstine v. Sec'y, Fla. Dep't of Corr., No. 12-11069, 2012 WL 6699124, at *3 (11th Cir. Dec. 26, 2012) (citation and footnote omitted) (not selected for publication in the Federal Reporter). Additionally, "[a] difference in medical opinion between a doctor and an inmate as to the inmate's diagnosis or course of treatment does not establish deliberate indifference." Id. (citation omitted).

While Plaintiff disagrees with the course of treatment, the medical decisions were in accordance with acceptable standards of medicine and did not constitute wanton conduct.  Plaintiff has failed to provide any competent medical evidence to support his claim that Dr. Lohse was deliberately indifferent to his serious

35

medical needs.  He opines that Dr. Lohse should have explored other options, but this disagreement with the course of treatment does not establish that he was subjected to cruel and unusual punishment.  Accordingly, the undersigned recommends that Defendant Lohse's Motion for Summary Judgment (Doc. #48-2) be granted and summary judgment be entered in his favor.

**7. Defendant Dr. Page A. Smith, M.D. - Eighth Amendment Claim**

Plaintiff asserts that Defendant Smith was deliberately indifferent to his serious medical needs in denying Plaintiff's grievances relating to his medical complaints.  While Plaintiff does not specifically identify what, or how many, grievances he bases his claim upon, it appears that Plaintiff has attached the pertinent grievances to his Complaint.  See Complaint at 21, 27, 31, 37, 38, 40; Plaintiff's Response (Doc. #71), P. Ex., Responses, dated June 15, 2009, and July 16, 2010.  Even assuming Defendant Smith directed that the grievances be denied, that action is insufficient to impose liability.  See Larson v. Meek, 240 Fed. App'x 777, 780 (10th Cir. 2007) (not selected for publication in the Federal Reporter) (finding that a defendant's "denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations"); Baker v. Rexroad, 159 Fed. App'x 61, 62 (11th Cir. 2005) (per curiam) (not selected for publication in the Federal Reporter) ("Because the failure of [the defendant] to take corrective action upon the

filing of [the plaintiff]'s administrative appeal at the institutional level did not amount to a violation of due process, the district court properly determined that [the plaintiff] failed to state a claim under § 1983"), <u>cert</u>. <u>denied</u>, 549 U.S. 840 (2006); <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999) (finding that prison officials who were not involved in an inmate's termination from his commissary job, and whose only roles involved the denial of administrative grievances or the failure to act, were not liable under § 1983 on a theory that the failure to act constituted an acquiescence in the unconstitutional conduct), <u>cert</u>. <u>denied</u>, 530 U.S. 1264 (2000).

After thoroughly reviewing Defendant Smith's responses to Plaintiff's grievances, the undersigned concludes that Smith was not deliberately indifferent to Plaintiff's serious medical needs. Before denying Plaintiff's grievances, Smith reviewed Plaintiff's medical records, set forth a brief history of the medical care provided to him for that time period, concluded that he was being treated in accordance with FDOC policy and procedure, and then advised him that if he experienced a medical issue, he had the option of signing up for sick call. Accordingly, the undersigned recommends that Defendant Smith's Motion to Dismiss (Doc. #53) as to Plaintiff's Eighth Amendment claims be granted and the claims as to Defendant Smith be dismissed.

### 8. **Defendant Officer Howell - Eighth Amendment Claim**

Plaintiff claims that, from November 20, 2008, through November 23, 2008, Defendant Howell, with direct orders, forced Plaintiff to use the top bunk until Plaintiff fell from the top bunk on November 23rd. Complaint at 10. In denying Plaintiff's grievance addressing this issue, Dr. Gilo, M.D., the Chief Health Officer, stated: "Officer Howell at RMC was contacted and stated that although he does not remember this incident, any inmate that presents a valid medical pass for a lower bunk pass [sic] is assigned to a lower bunk." Id. at 19, Response, dated October 22, 2010.

The Prison Litigation Reform Act requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). "A claim is frivolous if it is without arguable merit either in law or fact." Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir.) (citing Battle v. Central State Hospital, 898 F.2d 126, 129 (11th Cir. 1990)), cert. denied, 534 U.S. 1044 (2001). A complaint filed in forma pauperis which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. Neitzke v. Williams, 490 U.S. 319, 328 (1989). Section 1915(e)(2)(B)(i) dismissals should only be ordered when the legal theories are "indisputably

meritless," id. at 327, or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992). "Frivolous claims include claims 'describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'" Bilal, 251 F.3d at 1349 (quoting Neitzke, 490 U.S. at 328). Additionally, a claim may be dismissed as frivolous when it appears that a plaintiff has little or no chance of success. Bilal v. Driver, 251 F.3d at 1349.

Nevertheless, in considering Plaintiff's claims under 28 U.S.C. § 1915, the Court must read his pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972). Here, after reviewing Plaintiff's allegations and exhibits concerning Defendant Howell, see Complaint at 10, 17-19, it is evident that Correctional Officer Howell, who is charged with enforcing the FDOC's rules, regulations, and policies, would have honored a valid medical pass. However, Plaintiff acknowledges that he was not able to present a low/bottom bunk pass to Officer Howell during that time period because Dr. Isra had not issued one. Accordingly, the undersigned recommends that Plaintiff's Eighth Amendment claim as to Defendant Howell be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) since it appears that Plaintiff has little or no chance of success.

## 9. <u>Defendants Smith, Howell, Belizaire, and Isra - Americans With Disabilities Act and Rehabilitation Act Claims</u>

Plaintiff attests that his medical condition was not taken into account and he was denied a low/bottom bunk pass. Additionally, he asserts that there are no steps or ladders to assist disabled inmates up to and down from the top bunks in violation of Title II of the Americans with Disabilities Act (hereinafter ADA) and section 504 of the Rehabilitation Act of 1973 (hereinafter RA). <u>See</u> Complaint at 9, 10. Defendants Smith, Howell, Belizaire, and Isra claim that Plaintiff has failed to allege or demonstrate that there was any discriminatory motive in the delivery of medical services and that he presents no allegations that the initial assignment to an upper bunk or the treatment of the subsequent injury was discriminatory based on any alleged disability. <u>See</u> Isra's Motion for Summary Judgment at 17; Defendants' Motion to Dismiss at 18.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The language of Title II generally tracks the language of Section 504

of the RA[9] and, in fact, the statute specifically provides that
"the remedies, procedures and rights" available under Section 504
shall be the same as those available under Title II.  42 U.S.C. §
12133.  Clearly, "Title II of the ADA, which prohibits public
entities from discriminating against disabled individuals, see 42
U.S.C. § 12132, applies to prisoners in state correctional
institutions." Ganstine, 2012 WL 6699124, at *3.

       The Eleventh Circuit has stated:

              In order to state a Title II claim, a
       plaintiff generally must prove (1) that he is
       a qualified individual with a disability; (2)
       that he was either excluded from participation
       in or denied the benefits of a public entity's
       services, programs, or activities, or was
       otherwise discriminated against by the public
       entity; and (3) that the exclusion, denial of
       benefit, or discrimination was by reason of
       the plaintiff's disability.

Bircoll v. Miami-Dade Co., 480 F.3d 1072, 1083 (11th Cir. 2007)
(citing Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001)).

       Thus, Plaintiff Wilson has the burden of showing that he is a
qualified individual with a disability under the ADA.  He must also
show that he was denied reasonable accommodation by reason of his
disability or was otherwise discriminated against by the FDOC.
Here, the record reflects that the Defendants provided adequate and

---

       [9] Section 504 of the RA provides that "[n]o otherwise qualified
individual with a disability in the United States . . . shall, solely by
reason of her or his disability, be excluded from the participation in,
be denied the benefits of, or be subjected to discrimination under any
program or activity receiving Federal financial assistance." Liese v.
Indian River Co. Hosp. Dist., 701 F.3d 334, 342 (11th Cir. 2012)
(citation omitted).

prompt medical treatment to Plaintiff and provided him with valid medical passes, when medically necessary and appropriate. While the FDOC provides for the issuance of a low/bottom bunk pass as a means of accommodating those inmates who have trouble accessing an upper bunk,[10] it is a decision that is ultimately made by the inmate's attending physician. Additionally, the inmate has the option of accessing sick call at any time to readdress the issue. In Plaintiff's case, based on the medical judgment of Dr. Isra, Plaintiff was issued a cane pass on November 20th, but not a low/bottom bunk pass.

The Defendants contend that Plaintiff has not alleged intentional discrimination due to his disability; and therefore, Plaintiff is not entitled to seek damages. "[A] plaintiff may demonstrate discriminatory intent through a showing of deliberate indifference." Liese v. Indian River Co. Hosp. Dist., 701 F.3d 334, 345 (11th Cir. 2012). Plaintiff Wilson has not shown that the Defendants were deliberately indifferent in that he has not established that the Defendants knew that harm to a federally protected right was substantially likely and then failed to act on that likelihood. See id. at 344 (citations and quotations omitted). Given the record, the undersigned recommends that

---

[10] See Complaint at 19, Grievance Response (stating "any inmate that presents a valid medical pass for a lower bunk pass is assigned to a lower bunk").

Defendant Isra's Motion for Summary Judgment and Defendants Smith, Howell, and Belizaire's Motion to Dismiss be granted as to Plaintiff's ADA/RA claims.

Accordingly, for all of the above-stated reasons, it is respectfully

**RECOMMENDED:**

1.   That Plaintiff's claims for monetary damages (for alleged 42 U.S.C. § 1983 violations) from Defendants Smith, Howell, Belizaire, and Isra in their official capacities be dismissed.

2.   That Defendant Lord be dismissed as a Defendant in this action.

3.   That Defendant Lohse's Motion to Dismiss the Plaintiff's Amended Complaint and Motion for Summary Final Judgment (Doc. #48) be granted as to Plaintiff's Eighth Amendment claim and denied in all other respects.

4.   That Defendants Smith, Howell, and Belizaire's Motion to Dismiss (Doc. #53) be granted as to Plaintiff's Eighth Amendment claims against Smith and Belizaire as well as Plaintiff's ADA/RA claims; that the Motion to Dismiss be denied in all other respects, except as provided in paragraph one.

5.   That Defendant Isra's Motion for Summary Judgment (Doc. #63) be granted as to Plaintiff's Eighth Amendment and ADA/RA claims.

6.     That Plaintiff's Eighth Amendment claim against Defendant Howell be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

7.     That the Clerk be directed to enter Judgment in favor of Defendants Lohse and Isra and against Plaintiff.

8.     That the Clerk be directed to close the file.

**DONE AND ENTERED** in Chambers in Jacksonville, Florida this 11th day of February, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

sc 2/1
c:
Jeff E. Wilson
Counsel of Record
The Honorable Marcia M. Howard, United States District Judge